IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25–cv–00127–-RMR-MDB

CLEO BENTLEY, individually and as Personal Representative of the ESTATE OF GAYLE
PATRICIA NICE (deceased),

     Plaintiff,

v.

AHC OF COLORADO SPRINGS, LLC, a Utah limited liability company d/b/a ADVANCED
HEALTH CARE OF COLORADO SPRINGS,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

This matter is before the Court on Defendant's Amended Motion to Compel Arbitration
and Stay Proceedings. (["Motion"], Doc. No. 12.)[1] Plaintiff responded in opposition,
(["Response"], Doc. No. 18), and Defendant replied, (Doc. No. 21). The Court held an
evidentiary hearing on June 23, 2025. (Doc. No. 33.) During the Hearing, the Court heard
testimony from Cleo Bentley, Marjorie Henschel, and Robert Beckman. The Court also heard
oral argument from counsel. After considering all arguments, evidence presented, and applicable
law, the Court respectfully **RECOMMENDS** the Motion be **DENIED**.

---

[1] AHC's original motion to compel arbitration was filed at (Doc. No. 10). AHC then filed their
amended Motion to include a conferral statement pursuant to D.C.COLO.LCivR 7.1(a). Since
the amended Motion does not include a copy of the Arbitration Agreement at issue, the Court
will consider the copy submitted with the instant Motion at (Doc. No. 10-1) for its analysis.

# BACKGROUND

On or about July 1, 2023, Gayle Nice [the "Decedent"] was admitted to Advanced Health Care ["AHC"], a licensed nursing care institution in Colorado Springs, Colorado. (Doc. No. 12 at ¶ 1; Doc. No. 19 ¶ 1.) She passed away approximately two weeks later. (Doc. No. 1 at ¶ 33.) Cleo Bentley, daughter of Decedent and representative of the Decedent's estate, now brings negligence and wrongful death claims against AHC in connection with the Decedent's death. (*See generally id.*)

On February 12, 2025, AHC filed the instant Motion arguing Decedent entered into a valid and binding arbitration agreement ("Arbitration Agreement") and is therefore required to arbitrate this dispute. (*See generally* Doc. No. 12.) Plaintiff challenges the validity of the Arbitration Agreement, arguing the marking on the Arbitration Agreement is not Decedent's signature. (Doc. No. 19 at 2; *see generally* Doc. No. 20 (affidavit of Wendy Carlson, handwriting expert).)

Finding that the resolution of this threshold question of formation cannot be made on the Motion and briefing alone, the Court ordered an evidentiary hearing. (Doc. No. 28 at 2) (citing *Avedone Eng'g, Inc. v. Seatex*, 126 F.3d 1279,1287 (10th Cir. 1997) ("The existence of an agreement to arbitrate is a threshold matter which must be established before the FAA can be invoked."). The following facts and arguments are taken from the record, including the evidence presented during the June 23, 2025, evidentiary hearing.

1. The Arbitration Agreement (Doc. No. 10-1)[2], provides that "any claim of medical malpractice" connected to Decedent's treatment be submitted to arbitration. (Doc. No. 12 at ¶ 2; Doc. No. 10-1 at 1.)

2. The Arbitration Agreement submitted by AHC at (Doc. No. 10-1) includes signatures from both an AHC representative and purportedly from Decedent:



3. However, Plaintiff contends that the marking above "Nice Gayle" is not the Decedent's signature, nor is it Ms. Bentley's signature.[3] (*See* Doc. No. 19-2 (Pl.'s Aff.); Pl.'s Test. 23:00–24:00.)

---

[2] The amended Motion continues to refer to and cite the Arbitration Agreement filed with the original motion, at (Doc. No. 10-1). The Court will do the same.

[3] Ms. Bentley had power of attorney for Decedent while Decedent was staying at AHC. (Doc. No. 19 at 7.)

4.  In support of the contention that the marking is not Decedent's signature, Plaintiff

    attaches Decedent's signatures on her last will and testament as a comparator. (*See* Doc.

    No. 19-1.)

it willingly (or willingly direct another to sign for me), that I execute it as my free and

voluntary act for the purposes therein expressed, and that I am eighteen years of age

or older, of sound mind, and under no constraint or undue influence.

GAYLE PATRICIA NICE, Testatrix

5.  Plaintiff also submits the affidavit of "certified questioned document examiner" Wendy

    Carlson, who opines "it is highly probable" that the marking on the Arbitration

    Agreement was not made by Decedent or Plaintiff. (Doc. No. 20-1.)

6.  Moreover, during the evidentiary hearing, Ms. Henschel (Decedent's best friend), as well

    as Ms. Bentley (Decedent's daughter), credibly testified that they did not believe the

    marking on the Arbitration Agreement was Decedent's signature or initials. (Henschel

    Test. 12:10–14:10 (June 23, 2025); Pl's Test. 23:00–24:00, 31:00–30 (June 23, 2025).)

7.  Plaintiff offers additional evidence that tends to call into question the validity of the

    Arbitration Agreement. For example, according to Plaintiff, the first set of records

    produced by AHC—which followed Plaintiff's September 2023 preservation letter, as

    well as Plaintiff's December 2023 record request—*did not* include the Arbitration

    Agreement. (Doc. No. 19 at 3.) Then, on October 31, 2024, when AHC finally provided a

    copy of the Arbitration Agreement with its second set of records, it provided a version

    that was not signed by AHC. (*Id.* at 4.)



8. During the evidentiary hearing, Robert Beckman, a representative for AHC, explained

    that typically, hard copy files are uploaded to AHC's electronic system only *after* a

    patient is released from the facility. (Beckman Test. 56:00–57:40 (June 23, 2025).)

    Therefore, it is likely that in this case, an AHC employee sought to upload Decedent's

    files into the electronic system *after* Decedent was discharged, and it was then that they

    noticed the missing signature on the Arbitration Agreement. (*Id.*) Mr. Beckman further

    testified that in this case, AHC's signature must have been added on July 12, 2023, at the

    earliest, subsequent to the Decedent's purported July 1, 2023 signature and Decedent's

    July 11, 2023, discharge.[4] (*Id.*)

9. Mr. Beckman also testified about Defendant's intake process. (*Id.* at 45:30–55:00.)

    Relying on typical intake procedures, Mr. Beckman testified that Decedent likely signed

---

[4] Mr. Beckman's testimony—that AHC must have signed the agreement *after* Decedent was discharged—was of interest to the Court during the June 23, 2025, hearing. It raises the question of whether the Arbitration Agreement was fully executed and valid while Decedent was alive and in the facility's care. *See generally Johnson v. Rowan Inc.*, 2021 COA 7, ¶¶ 51–54 (Colo. App. 2021) (holding that a long-term care facility could not enforce an arbitration agreement because the facility (1) failed to provide the patient with a written copy of the arbitration agreement the patient signed, and (2) failed itself to sign the arbitration agreement as required by the Health Care Availability Act, §§ 13-64-101 to -503, C.R.S. 2020.) However, the Court need not resolve this issue here.

her intake paperwork while lying in bed. (*Id.* at 48:00–45.) He further testified that
Defendant's records indicate Decedent was cognitively alert during her intake and that
there was no notation in AHC's records to suggest that Decedent declined to sign the
Arbitration Agreement. (*Id.* at 48:40–50:00.)

10. Mr. Beckman confirmed that he was not present during intake with Decedent.

11. Mr. Beckman also confirmed that he did not speak to anyone who was present during
intake with Decedent.

## LEGAL STANDARD

Where the very formation of an arbitration agreement is contested, the general
presumption in favor of arbitration "disappears." *Frazier v. W. Union Co.*, 377 F. Supp. 3d 1248,
1255 (D. Colo. 2019) (quoting *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir.
2014)).

In resolving a dispute concerning the formation of an arbitration agreement, courts apply
"a standard similar to that governing motions for summary judgment." *Ernest v. Lockheed
Martin Corp.*, 2008 WL 2958964, at *3 (D. Colo. July 29, 2008) (quoting *Stein v. Burt-Kuni
One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005)). The party seeking to compel
arbitration—here, Defendant—"bears the initial burden of setting forth sufficient evidence to
demonstrate that an enforceable arbitration agreement exists." *Id.* Should Defendant meet this
burden, the onus shifts to the opposing party—here, the Plaintiff—"to show that there is a
'genuine issue of material fact as to the making of the agreement.'" *Id.* "If [Plaintiff] fails to
meet his burden, then arbitration is appropriate for all disputes covered by the arbitration

agreement. However, if [Plaintiff] establishes a genuine issue of material fact, a jury trial "on the existence of the arbitration agreement is required." *Id.*

## ANALYSIS

Upon review of the evidentiary record, the Court concludes Defendant has not carried even its initial burden. This case is not like *Ernst*, where the court found the defendant had indeed satisfied its initial burden. *Ernest*, 2008 WL 2958964, at *5. In that case, the defendant offered an expert opinion stating it was highly probably that the signature in question was the plaintiff's signature. *Id.* The expert also found no evidence of cutting and pasting. *Id.* And the defendant offered evidence that a signature on the Arbitration Agreement was always required. *Id.* The *Ernst* court found this and other evidence was sufficient to shift the burden "to Plaintiff to show that there is a genuine issue of material fact as to the making of the agreement." *Id.*

That is not the case here. In this case, the evidence shows Decedent would have received services regardless of whether or not she signed the Arbitration Agreement. (Beckman Test. 51:20–40, 1:03:20–04:00 (June 23, 2025).) Moreover, Defendant did not offer any expert testimony to show the signature was authentic, nor did Defendant offer a single witness to testify that they personally witnessed Decedent sign the Arbitration Agreement, nor did Defendant offer video evidence or other recording to show Decedent signed the Arbitration Agreement. Instead, Defendant offered a single witness, Mr. Beckman, who testified about the facility's general intake procedures.

It is true that evidence of an organization's routine practice "may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice." *Frazier*, 377 F. Supp. 3d at 1257 (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d

1248, 1261 (10th Cir. 2012)) ("Personal knowledge of whether the standard practice is followed when customers complete transactions is 'enough to raise the inference that the standard practice was followed.'"). However, in this case, Mr. Beckman's "routine practice" testimony is severely undercut by evidence that during Defendant's intake, routine practice was not followed. Specifically, Mr. Beckman admitted that while it is common practice for AHC to sign the Arbitration Agreement at the time of intake, that did not occur here. (Beckman Test. 55:00–57:40 (June 23, 2025).) Instead, AHC executed the Arbitration Agreement sometime after Decedent signed it, and most likely after she was discharged. (*Id*.) Moreover, the signed Arbitration Agreement appears to be backdated (or said another way—falsely dated), which raises additional doubts about Defendant's practices. (*Id*. at 57:00–45.)

And even assuming Defendant had carried its initial burden, Plaintiff has offered an unrebutted opinion from a handwriting expert, the testimony from two witnesses who are familiar with Decedent's signature, and a history that raises questions about Defendant's intent to rely on this purported Arbitration Agreement. Thus, even if Defendant carried its initial burden—and it has not—Defendant's Motion must still be denied because, at a minimum, Plaintiff would have established a genuine issue of material fact as to the existence of an enforceable Arbitration Agreement. *See Ernst*, 2008 WL 2958964, at *5.

## CONCLUSION

For the foregoing reasons, the Court respectfully **RECOMMENDS** that Defendant's Amended Motion to Compel Arbitration and Stay Proceedings (Doc. No. 12) be **DENIED**.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 24th day of July, 2025.

BY THE COURT:

_____
Maritza Dominguez Braswell
United States Magistrate Judge